UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| GHASSAN GEORGE MOUREY<br>Petitioner,<br>v.<br>MARK BOWEN,<br>Respondent. | Case No. 5:25-cv-03262-WLH (DTB)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable Wesley L. Hsu, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**PROCEEDINGS**

On December 1, 2025, petitioner Ghassan George Mourey ("Petitioner"), proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."), accompanied by a Motion for Appointment of Counsel. (Docket Nos. 1, 2). The Petition is 62 pages in length and includes a nine-page handwritten form petition for writ of habeas corpus under 28 U.S.C. § 2241, an

eleven-page type-written petition for writ of habeas corpus under 28 U.S.C. § 2241 (with the caption interlineated), and eight supporting exhibits. Both the handwritten and type-written form petitions are verified by Petitioner, as required by Rule 2(c)(5) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules" or "Habeas Rule").

The Petition raises three claims: (1) Petitioner's continued detention in immigration custody is presumptively unreasonable as he has been held for six months and his removal is unlikely in the reasonably foreseeable future; (2) his detention violates his right to substantive due process in the form of his liberty interest; and (3) his detention violates his right to procedural due process under the Fifth Amendment as he has been denied any meaningful opportunity to contest his detention and he was detained following 13 years of compliant supervised release. (Pet. at 3, 6).[1]

Pursuant to Habeas Rule 4, the Court screened the Petition and determined that it appeared at least some of Petitioner's claims were potentially meritorious. Accordingly, on December 24, 2025, the Court issued an Order for Respondent to show cause ("OSC") as to why the Petition should not be granted, citing multiple recent district court cases within the Ninth Circuit where habeas relief had been granted on similar facts. (Docket No. 6).[2] On January 14, 2026, Respondent filed his Response to the OSC, wherein he stated "[a]t this time, Respondent does not have an opposition argument to present." (Docket No. 8). On January 22, 2026, Petitioner filed a Reply to the Response. (Docket No. 11).

/ / /

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] In that OSC, the Court denied Petitioner's Motion for Appointment of Counsel. (Docket No. 6 at 1).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court recommends that Petitioner's request for habeas relief in the Petition be granted.

## II.

## BACKGROUND

Petitioner was born in Kuwait and earned his college degree in the United Kingdom before coming to the United States in 1982 at the age of 23. (Pet. at 11-12). Following his arrival in the United States, he obtained legal permanent resident status through his marriage to a United States citizen and worked lawfully in the construction industry. (Id. at 12). In 1998, he was convicted of a felony drug offense and sentenced to 17 years in prison. (Id.). As a result of his conviction, in 2011, he was charged as deportable by Immigration and Customs Enforcement ("ICE"), pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, and he was thereafter ordered removed to Kuwait by an immigration judge. (Id. at 2, 10, 12-13; Pet., Exhibit ["Exh."] B [Department of Homeland Security form entitled "Warning for Failure to Depart," stating that Petitioner's removal order became final on September 11, 2012]). Petitioner did not appeal the order of removal. (Pet. at 12). Following his order of removal, Petitioner was held in immigration custody for 87 days before he was released at the Mariana Detention Center in Florida. (Id.). Thereafter, Petitioner reported to immigration authorities as required by the conditions of his supervision. (Id.). There is no evidence that Petitioner ever violated his conditions of supervision or that he ever missed – or was even late to – an appointment during the 13 years of his conditional release. (See id. ("For all the time that [petitioner] was released he reported to all and every single one of the appointments ICE set for him and he was always on time.")). On May 13, 2025, Petitioner appeared for a regularly scheduled appointment to "check in" with ICE and was detained. (Id. at 13). On that date, immigration officials informed Petitioner

that "he did not do anything wrong" but that he was now being detained "because of the policies of the new administration." (Id.). Petitioner has remained in custody at the Adelanto ICE Processing Center since the date of his detention on May 13, 2025. (Id.).

On June 17, 2025, Petitioner received a Notice to Alien of File Custody Review. (Id. at 14; Pet., Exh. C [ICE Detainee Request Form]). Petitioner's custody status was reviewed on or about August 11, 2025, and on the same date he was notified that his detention would continue. (Pet. at 14; Pet., Exh. D [Decision to Continue Detention]).

On September 22, 2025, Petitioner received a document entitled "Notice to Alien of Interview for Review of Custody Status" (Pet., Exh. E) and was thereafter interviewed in person on October 24, 2025. (Pet. at 14). He subsequently received a notification of review of his status at the "Headquarters in Washington D.C.," and has yet to hear the results of that review. (Id.).

Despite being ordered removed to Kuwait in 2012, Petitioner contends that such removal is impossible because of his religion and his criminal conviction. Petitioner asserts that Kuwait will never accept him as either a citizen or a national and that he is, therefore, "stateless." (Id. at 3, 11, 14). Petitioner appends as an exhibit to the Petition a copy of a letter from the Consulate General of the State of Kuwait in Los Angeles denying the request from United States Immigration and Customs Enforcement to issue a travel document to Petitioner for purposes of his removal from the United States, which states that Petitioner "is NOT a citizen or national of the State of Kuwait." (Id. at 14; Pet., Exh. H at 2) (emphasis in original).

Petitioner alleges he has been continuously detained by ICE at the Adelanto Processing Center since his re-arrest on May 13, 2025. (Pet. at 11). He further asserts that he has cooperated with the Government's efforts to obtain his travel documents, as he seeks to end his detention as quickly as possible, but that, as noted,

Kuwait has declared it will not issue travel documents for him. (Id. at 15). As a result, Petitioner alleges that his detention is impermissibly indefinite, as there is no likelihood he will be removed in the reasonably foreseeable future, and must, therefore, be released from custody. (Id. at 6-7, 15-18).

As set forth below, the Court finds that Petitioner is entitled to habeas relief on two of the claims raised in the Petition

## III.

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

/ / /

/ / /

/ / /

## IV.

## DISCUSSION

As noted above, Petitioner alleges three claims: His continued detention is presumptively unreasonable given that he has been held for more than six months and his removal is not likely in the reasonably foreseeable future; his detention violates his right to substantive due process in the form of his liberty interest; and his detention violates his right to procedural due process as he has been denied any meaningful opportunity to contest his detention, and he was unexpectedly detained after complying with the terms of his supervised release for 13 years.

As also noted above, Respondent has failed to counter any of the facts or claims raised by Petitioner; in response to the Court's OSC, Respondent stated "[a]t this time, Respondent does not have an opposition argument to present." (Docket No. 8 at 2). Accordingly, the Court considers the allegations in the Petition to be uncontested by Respondent. See Lara Urriola v. LaRose, Case No. 25-cv-3556-DMS-MMP, 2025 WL 3764126, at *2 (S.D. Cal. Dec. 30, 2025 (granting habeas relief where respondent failed to address or otherwise rebut the uncontested claims in the petition, and citing to N-E-M-B v. Wamsley, Case No 3:25-cv-989-SL, 2025 WL 3527111, at *7-8 (D. Or. Dec. 9. 2025)).

As set forth below, the Court finds that habeas relief is warranted on Petitioner's claims that he was denied his right to procedural due process under the Fifth Amendment and that his detention has been unreasonably prolonged.[3]

**A. Procedural Due Process.**

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including aliens, whether their presence here is lawful, unlawful,

---

[3] Because the Court is recommending that habeas relief be granted on these claims, the Court finds it unnecessary to consider Petitioner's substantive due process claim.

temporary, or permanent," are entitled to protection under this provision of the Constitution. Zadvydas, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690; see also United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. Id. at 482. This principle has been recognized by courts in the Ninth Circuit as extending to individuals subject to immigration removal proceedings. Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond."); accord, Garro Pinchi, 792 F. Supp. 3d at 1032 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). In Mathews v. Eldride, 424 U.S. 319 (1976), the Supreme Court established three factors for a court to consider for purposes of

determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id. at 335; see Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention").

Thus, the Court considers the Mathews factors as applied to Petitioner's claim.

1. Private Interest

In the instant case, although Petitioner is the subject of a final order of removal, he has been on supervised release since 2012. (Pet. at 12). During his 13 years of supervision, he complied with all of his conditions of release, was gainfully employed with a stable lifestyle, and established strong community ties. (Id. at 12-13). Accordingly, Petitioner's liberty interest in remaining out of custody is protected under the Due Process Clause. See e.g., Cruz v. Lyons, Case No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal, Nov. 6, 2025) (granting application for temporary restraining order and finding petitioner had a protectable liberty interest in remaining on supervised immigration release); C.A.R.V. v. Wofford, Case No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) (finding petitioner had a constitutionally protected liberty interest in

remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention).

Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing. Petitioner has a substantial private interest in remaining free from detention on supervision, living in his home, providing for his family, and participating in the community, all out of custody. See C.A.R.V., 2025 WL 3059549, at *10 ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); Garro Pinchi, 792 F. Supp. 3d at 1034-35 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); López, 2025 WL 2959319, at *6 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom."); Manzanarez v. Bondi, Case No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding that petitioner had a private interest in remaining free from detention where "he was released on his own recognizance for over two years and complied with his [order of release on recognizance] conditions during that time").

2. Risk of Erroneous Deprivation

The absence of a pre-detention hearing under these circumstances presents an unacceptable risk that the Government would erroneously deprive Petitioner of his liberty interest. Civil immigration detention is permissible only to prevent flight or

reduce the risk of danger to the community. Zadvydas, 533 U.S. at 690-91. The risk of a wrongful deprivation is particularly high here given the evidence that Petitioner has complied with the terms of his release for 13 years and has maintained all required contacts with the federal government, including the one that precipitated his detention. (Pet. at 12). Respondent has adduced no evidence – or even argued – that Petitioner poses a risk of flight. And while Petitioner was convicted on drug trafficking charges in 1998, he served a 17-year prison sentence and was subsequently released on supervision by immigration officials *after* he had served his custodial sentence for his criminal offense. (Pet. at 12). Thus, immigration officials clearly did not believe Petitioner posed a danger to the community when he was released under their supervision in 2012; otherwise, they would not have released him. Moreover, there are no facts to indicate that Petitioner has been anything other than a model supervisee during the 13 years he has been on immigration release. The absence of any indication that Petitioner has violated any of the terms of his release over the 13 years of supervision militates against finding that he currently poses any risk to his community. The record – which is undisputed – raises an inference that the Government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight. Cf. e.g., Singh v. Andrews, Case No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025); Pablo Sequen v. Albarran, No. 25-cv-06487-PCP, – F. Supp. 3d —, , 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025). As noted, ICE has *already determined* that Petitioner does not pose a flight risk or danger to his community when it released him pursuant to an Order of Supervision in 2012. Respondent has not pointed to any evidence indicating that decision was erroneous or should otherwise be reassessed.

Considering the second Mathews factor, the Court finds that it also weighs in favor of finding a procedural due process violation, since "[t]here is an unacceptably

high risk that the Government would erroneously deprive - or already has erroneously deprived - Petitioner of [his] liberty interest absent a pre-detention hearing. Cruz, 2025 WL 4051129, at *4.

3. Government Interest

As for the third Mathews factor, "as many other courts have recognized, there is no meaningful countervailing Government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." Cruz, 2025 WL 4051129, at *4 (collecting cases). Here, the Government has made no argument as to why Petitioner should be detained. In fact, with respect to the reason provided to Petitioner by the Government in its Decision to Continue Detention, dated August 11, 2025, it appears to be not only baseless, but factually erroneous. In its August 11, 2025 Notice, ICE informed Petitioner that its determination was "based upon your status as an alien previously removed from the United States, lacking any significant ties to the community." (Pet., Exh. D; Pet. at 37). There is nothing in the record to suggest Petitioner was previously removed – the Government has been unable to remove him for 13 years – and this language appears to indicate the Government was simply using a form letter, or one prepared for another detainee, for purposes of detaining Petitioner. Moreover, Petitioner has significant ties to the community, having resided in the United States since 1982. "[T]he Government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lessor bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). Moreover, "any fiscal or administrative burden on the additional procedural safeguard of a hearing before neutral adjudicator imposes on the Government is at most 'minimal'[.]" Sun v. Santa Cruz, Case No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). There are no facts in

the instant record – none – which would support a finding that the Government's decision in 2012 to release Petitioner on supervision was made in error. Petitioner has complied with all of his conditions, he has maintained employment, and he has had a productive, stable life with his family. Therefore, it is clear to the Court that there is a great risk that the lack of a pre-detention process – a hearing to determine whether Petitioner, in fact, presents a risk of flight or danger to the community – has resulted in his unnecessary detention.

Finally, to the extent Respondent may argue that Petitioner's detention is necessary in light of his pending removal from the United States, the record forecloses such an argument. Petitioner has presented undisputed evidence that he cannot be removed to Kuwait, as that State has refused to recognize him as a citizen or national, and has refused the request of ICE to issue Petitioner travel documents. (Pet. at 14-15). As set forth below, in light of Respondent's failure to identify any action, additional or otherwise, taken by ICE to effectuate Petitioner's removal to either Kuwait or to a third country, Respondent has not met his burden to show a "significant likelihood" of Petitioner's removal in the "reasonably foreseeable future." See Zadvydas, 533 U.S. at 702. Moreover, even if Respondent had met his burden to show he had the authority to re-detain Petitioner, such proof would not resolve whether Respondent could detain him without regard to the Due Process Clause's protections. The Constitution's guarantee of due process may require a hearing even where a congressional statute may not. Garcia Barrera v. Andrews, Case No. 1:25-cv-01006-JLT-SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025) (citing Young v. Harper, 520 U.S. 143, 147-49 (1997), and Morrissey, 408 U.S. at 482); see also Marbury v. Madison, 5 U.S. 137, 180 (1803) ("[A] law repugnant to the constitution is void . . .."). Respondent has offered no reason – much less any compelling reason – as to why they should be able to detain Petitioner, who has developed a significant liberty interest during his thirteen years on release

and likely poses no danger to his community or risk of flight, without first providing him with notice and opportunity for a hearing before a neutral adjudicator.

In conclusion, the Court finds that the Government's detention of Petitioner on May 13, 2025, without adequate pre-detention process, when he had previously been released on supervision and had complied with his conditional release, violated his right to procedural due process under the Fifth Amendment, requiring his immediate release.

If the Government seeks to re-detain Petitioner, he must be provided "some kind of hearing *before* the state deprives [him] of [his] liberty." Zinermon, 494 U.S. at 127. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community. Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011).

**B. Prolonged Detention Claim.**

Pursuant to Federal law, a noncitizen who has been ordered removed from the United States shall be removed by the Department of Homeland Security within 90 days of such order, and during the 90-day removal period, the noncitizen must be detained. 8 U.S.C. § 1231(a)(1)(A). However, if the Government fails to remove the noncitizen during this initial 90-day period, further detention is only authorized under the statute if the noncitizen is (1) "inadmissible" under certain grounds, (2) "removable" as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) has been "determined by the attorney general to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); see also Zadvydas, 533 U.S. at 682 (the Government "may" continue to detain noncitizen after expiration of 90-day removal period or release them under supervision). Otherwise, the

noncitizen must be released subject to an order of supervision. 8 U.S.C. § 1231(a)(6).

In Zadvydas, 533 U.S. at 689, the Supreme Court held that a noncitizen may be detained pursuant to Section 1231(a)(6) only for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." The court specifically found that Section 1231(a)(6) "does not permit indefinite detention." Id. Accordingly, the court interpreted the statute to find that a six-month period of detention following an order of removal was "presumptively reasonable." Id. at 701. When detention exceeds the presumptively reasonable period of six months, the noncitizen must show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id.; see also Diouf v. Mukasay, 542 F.3d 1222, 1223 (9th Cir. 2008) (quoting same). If the noncitizen satisfies their initial burden, the Government must then "respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. If the Government fails to do so, continued detention is unreasonable and therefore is no longer authorized by statute, and the noncitizen must be released. Jennings v. Rodriguez, 583 U.S. 281, 299 (2018) (citing Zadvydas, 533 U.S. at 701).

Here, Petitioner has been detained in immigration custody since May 13, 2025, a period greater than six months (see Pet. at 2, 11), and Petitioner's presumptively reasonable 6-month period of detention lapsed on November 13, 2025. Therefore, Petitioner must show, for purposes of habeas relief, that his detention is "indefinite," meaning that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

The Court finds that Petitioner has made the requisite showing that his detention is presently indefinite, and that there appears to be no significant likelihood that his removal will occur in the reasonably foreseeable future. Petitioner is a 68-

year-old Kuwaiti national and was ordered removed on September 11, 2012. (Pet. at 11). Notwithstanding the order of removal, the Government has been unable to remove him over the intervening 13 years. While the Government has requested travel documents from the State of Kuwait, that nation has refused to issue Petitioner any travel documents or to recognize him as a citizen or national. (Id.). Indeed, as recently as August 21, 2025, the Consulate General of the State of Kuwait in Los Angeles denied the ICE request to issue travel documents for Petitioner and disclaimed any citizenship or nationality on his behalf. (Id.) Thus, the Court finds that Petitioner has satisfied his initial burden of showing that there is good reason to believe that he is not likely to be removed in the foreseeable future, and therefore his detention is "indefinite." Zadvydas, 533 U.S. at 701. In light of Respondent's Response to the OSC, wherein Respondent informed the Court that it "does not have an opposition argument to present" (Docket No. 8 at 2), the Court finds that the Government has not rebutted Petitioner's showing. Zadvydas, 533 U.S. at 701.

Accordingly, the Court finds that Petitioner's detention has become indefinite, and thus unreasonable, and therefore Petitioner should be released from custody.

The Court recommends that habeas relief be GRANTED, and that a writ issue ordering Petitioner's immediate release from custody, subject to his previous conditions of supervision.

## V.

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) Accepting and adopting this Report and Recommendation; and (2) ordering that Judgment be entered: (a) Ordering Petitioner's immediate release from custody on his previous conditions of supervision; and (b) enjoining Respondent and his officers, agents, employees, attorneys and persons acting on his behalf in concert or in participation with him, from: (i) Re-detaining Petitioner without notice and a

pre-detention hearing before a neutral arbiter at which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community either because Petitioner has violated a term of his release or because his deportation to Kuwait is imminent and the necessary documents from the Republic of Kuwait have issued and are in the possession of ICE; and (ii) from removing Petitioner to any country other than Kuwait without appropriate notice and an opportunity to be heard in accordance with the applicable ICE regulations.

DATED: January 31, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in the Local Rules and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.